Judge Underwood,
delivered the opinion of the Court.
Letcher instituted an action of covenant against the trustees, founded on a covenant to which they, Ewing and Letcher, were parties. The covenant relates to the building of a meeting house j,, Perryville, of which Ewing \Vas the undertaker. It stipulates for the surrender, by Ewing and Letch-er, of various materials, to the trustees, for finishing the building. Among other things, the covenant states that “it is further understood by the trustees, Ewing and Letcher, that the said Letcher is to take an order on said trustees, from Ewing, for the amount of what the brick work may amount to. The trustees agree the order from Ewing to Letch- or be paid to said Letcher.” This extract is taken frbm the covenant as set out in the declaration. Letcher, on trial, recovered a judgment for $397 ; the defendants making defence by a demurrer to the declaration, and six.pleas, in all of which they were overruled by the court. To reverse this judgment, the defendants prosecuted a writ of error to this court, which affirmed the judgment with damages. The defendants then filed their bill in chancery, ,0 re^evet^ against the judgment, which being dismissed, they have prosecuted a writ of error to reverse the decree of the circuit court. The bill charges that Ewing and Lotcher were partners; that $601 69| had been paid to Ewing, $60 40 to Letcher, besides $75 which Letcher had credited on the order drawn by Ewing, in his favor, on the trustees, and that these sums exceeded the value of all the work done by Ewing and Letcher, on the meeting house. The bill charges that Ewing and Letcher are insolvent, and that they were prevented from proving payments on the trial of the suit against them, brought by Letcher. Wherefore, they pray for a set off against Letcher’s judgment. The trustees also complain that the cove *385 nant bn which the suit was founded, had been mátenally changed, to their prejudice, without their knów'l’edge.
The answer of Letcher,
Thealteraof a wri* b^taken^d-vantage of, to defeat the eery; unless satisfactory reason given, why non est factum, not Pli3aclin law* trustee;s theii- Written contract, ir?m ¿"d^Letcher partners, and demanding j^'¿har»’cd> with pay-ments made jiowird'shéws that they had credit for the Payme“ts 0e„ thg trialatlaw.
Letcher answered, denying his insolvency, and thé cha’rgés relative to thé alteration of the covenant and the partnership between him and Ewing, and asserts that the complainants obtained credit on the brial at law, for all payments made to him, and that h'e is not responsible for money paid to Ewing.
The points for adjudication, are sufficiently obvious by contrasting the allegations of the bill, with the nials of the answer. The alleged alterations of the covenant cannot, in this suit, constitute aii available defence agáinst thejudgment atlaw. If true, the plea of non est factum would have afforded the proper remedy at law. The complainants have not, satisfactoidly accounted for their failure to hiake that defence;
. , I he written 'contracts are á sufficient answer to those allegátions of the bill, which assert that Ewing and Letcher were partners, and possessed such a joint interest as to make the sums paid to Éwing a valid discharge of the Sum due Letcher, for the brick work, The quotation from the covenant declared on, shows clearly, that Letcher was td be paid separately, for the brick work. The provisions of the written ‘contracts cannot be assailed by parol evidence; unless fraud 'or mistake in reducing the contracts to writing, had been averred and established by proof. This has not been done. The payments made to Ewing; therefore, cannot be allowed as a set-off against Letcher’s judgment; The trustees, by the terms of their Written contract; have estopped themselves, and cannot demand such a thing as matter of right, either at law or in equity, The payments made to Letcher stand on a different footing. If these have not been allowed as credits, on the trial at law, the complainants are now entitled to them. From an inspection of the common law hecord, made an exhibit in the chancery proceedings, I am of opinion that the payments made to Letcher, were allowed as credits, and did diminish the damages, pro tanto. Thé order drawn by Ewing, on the trustees, in favor of Letcher; was for $481, from which deduct $75, the credit endorsed, and $60 fO, claimed inaddi- *386 tion, by the bill, and the remainder, with the addition of legal interest from the time the trastees were bound by their covenant to pay it, up to the rendition of the would equal the damages assessed. A bill of exceptions filed in the common law suit, states that the trustees had sundry witnesses called and sworn, and were proceeding to prove by them, for the purpose of lessening the damages, that they had made sundry payments to Stephen G. Letcher, on account of the brick work, .also to prove payments made to Ewing, &c. when the plaintiff objected to the proof of payments made to Ewing. The court sustained the objections and would not permit the evidence in relation to the payments made to Ewing, to go before the jury. It does not appear that the plaintiff objected to the evidence of payments made him, and as the trustees introduced witnesses on the subject, the inference is irresistable, that they were heard as to the payments made to Letcher. There is, therefore, no error in the decree of the circuit court, dissolving the complainant’s injunction, and dismissing their bill as to Letcher and his assignee, Smedley.
Ewing was ■properly be- and there°Urt should have been a decree foMt-uTsum*’ ■which he had enabled Letcher to draw from the trustees Improperly.
But in relation to the defendant, Ewing, the circuit court erred. He was so connected with the contract and business, that he was properly before the court, an<* being there, the court ought not to have dismissed the bill as to him, and given him costs. Ewing, in his answer, acknowledges that, at the time he drew the or^er favor °f Letcher, on the trustees, he and Letcher had received in payments, the value of all the work done by them, and that he was prevailed on by Leteher, to draw the order, notwithstanding the trustees had paid all that was due. He says his design was not fraudulent, but that his intemperate habits disqualified him for business, and intimates that Letch-er improperly persuaded him to do it. There is no proof that any imposition was practised by Letcher, in procuring the order. If then, as Ewing admits, there was nothing due when the order was drawn by him, and he has put it in Letcher’s power to recover from the trustees, when Ewing ought to have paid, having received from the trustees more than $600, he should be compelled to indemnify the trustees to the *387 extent of Letcher’s recovery against them. The court should, therefore, have calculated legal interest on the amount of the judgment in favor of Letcher, against the trustees, up to the time of rendering the decree, and then decreed the gross amount against Ewing, in their favor, together with costs in the chancery suit.
Denny and Green, for plaintiffs; Haggin, for defendants.
The decree of the circuit courtis, therefore, reversed, in relation to the defendant, Ewing, with costs, and the cause remanded, with instructions to render a decree against him, in conformity to this' opinion, and the decree of the circuit court in relation to Letcher and Smedley is affirmed with costs and damages, on the damages decreed in the circuit court.